# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **STEPHANIE K.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | **No. 20 C 4887** |
| ) | |
| **v.** ) | **Magistrate Judge Jeffrey Cole** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, five years ago in February of 2017. (Administrative Record (R.) 191-200).[2] She claimed that she had been disabled since September 23, 2016, due to back surgery, lower back pain, and varicose veins. (R. 193, 250). Over the next three and a half years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on August 20, 2020. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on October 6, 2020. [Dkt. #7]. Plaintiff asks the court to reverse and remand the Commissioner's

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

[2] For some reason, plaintiff filed repeated applications for benefits on February 27, 2017; March 20, 2017; and April 13, 2017. (R. 191-200, 228-34). But the ALJ considered her application to have been filed February 23, 2017. (R. 15). That's somewhat significant as the regulatory framework changed in certain respects for applications filed after March 27, 2017. *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *6 (7th Cir. Aug. 27, 2021); *Deloney v. Saul*, 840 Fed.Appx. 1, 4 (7th Cir. 2020); .

decision, while the Commissioner seeks an order affirming the decision.

## I.

### A.

Plaintiff was born on June 14, 1965, making her 54 years old when the ALJ found her not disabled. (R. 12-36, 193). At her hearing, plaintiff testified that, on "an average bad day" she woke up with back pain or whole body pain. More often than not, she spent her days lying down with a pillow between her knees. (R. 42). She could sit 8 to 10 minutes before she had to change position, stand for 4 to 5, and walk about 50 yards. (R. 42-43, 45). She had four different levels of pain medication she took: a muscle relaxer, an anti-inflammatory, Tramadol, and Norco. (R. 44). She also got injections which would give her up to three weeks of relief. (R. 49). Plaintiff traced her problems to her last back surgery in 2016. (R. 45). On a good day she could get out of bed and sit, but had to elevate her feet due to her history of blood clots and varicose vein surgery. (R. 47). Even after her back surgery she tried to go back to work, She tried commercial cleaning and house cleaning, but after each time, it took her days to recover. (R. 50-51). She tried driving for Uber. (R. 50-51). But she just couldn't manage due to her pain. (R. 51).

The medical record in this case is large, about 1400 pages long. (R. 354-1745). As such, the court will dispense with a lengthy summary of the medical evidence, and focus on that evidence that is significant in terms of the parties' positions. But, suffice it to say, that plaintiff has a lot of back trouble and she has gone through a lot in a quest to alleviate it. She has had multiple back surgeries, including a laminectomy and fusion at L5-S1 in 2009 (R.850-851); a lumbar fusion and laminectomy in 2014 (R. 849); and a surgical procedure in October of 2016 which included revision of the prior laminectomy at L4-L5, a new laminectomy at levels L3-L4, an L4-L5

posterior spinal fusion, and a L4-S1 posterior spinal instrumentation. (R.440). She has also had numerous injections to relieve her pain. (R.1216, 1223, 1231, 1236, 1244). And, she has taken, and continues to take, a veritable pharmacy full of pain medications, from muscle relaxers up to narcotics like Norco and OxyCodone. (R.279, 291, 1385, 1389).

**B.**

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: degenerative disc disease; status post spinal fusion; fibromyalgia; degenerative joint disease of the right knee (R. 17). The ALJ determined that plaintiff's gastroesophageal reflux disease, high cholesterol, high blood pressure, varicose veins, asthma, and anxiety were not severe. (R. 18-21).

Next, the ALJ determined that the plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, and crawl and frequently balance. During this period, she should have avoided unprotected heights and moving mechanical parts. The claimant should have been allowed to change/alternate positions every hour for 1-2 minutes while remaining at the workstation and having no change in the work process.

(R. 21). The ALJ then reviewed plaintiff's allegations and activities. She then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 23). The ALJ said the plaintiff's statements were "inconsistent because the record documents no persistent limitations in gait or

3

station as a result of the claimant's back and knee impairments" and following her back surgeries, "injections were generally effective at relieving the claimant's pain." (R. 23). The ALJ then determined that plaintiff did not have impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ specifically considered the requirements for the Listings 1.02 and 1.04. (R. 22).

Next, the ALJ summarized the medical evidence. (R. 23-26). She also reviewed the medical opinions, affording little weight to the reviewing physicians who found plaintiff could do light work, finding that the medical evidence supported a limitation to sedentary work. (R. 27). The ALJ gave great weight to the opinions of the reviewing doctors who found plaintiff had no severe mental impairment. (R. 27). She rejected the opinions from plaintiff's treating doctors as inconsistent with the treatment records that documented improvement with injections and plaintiff's ability to work part-time cleaning houses. (R. 27-28). The ALJ explained that his residual functional capacity finding was supported by "the medical treatment notes that reveal no neurological deficits and a fairly normal gait," the absence of indications that she was "unable to sit straight or require an assistive device to ambulate," and the fact that epidural injections provided significant relief. (R. 28).

The ALJ then found that plaintiff was able to perform her past work as a legal secretary, based on the testimony from the vocational expert. (R. 28). Accordingly, the ALJ found plaintiff not disabled and not entitled to benefits under the Act. (R. 29).

## II.

If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole, *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019), but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

The substantial evidence standard is a low hurdle to negotiate. *Biestek*, 139 S. Ct. at 1154; *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). If reasonable minds could differ, the court must defer to the ALJ's weighing of the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020). But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result,

the case must be remanded if the ALJ fails in his or her obligation to build the required "logical bridge." As *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) put it: "we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." Of course, this is a subjective standard, and the very subjectivity of the requirement makes it difficult for ALJs hoping to write decisions that stand up to judicial scrutiny when challenged. One reviewer might see an expanse of rushing water that can only be traversed by an engineering marvel like the Mackinac bridge. Another might see a shallow creek they can hop across on a rock or two. But, in any event, the "logical bridge" requirement is "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[3]

### III.

### A.

The plaintiff lodges three arguments against the ALJ's decision. First, she contends that the ALJ's determination that her impairments did not meet or equal Listings 1.02 and 1.04 was erroneous. Next, the plaintiff argues that the ALJ improperly rejected the medical opinions from her treating physicians. Finally, the plaintiff claims the ALJ's residual functional capacity

---

[3] The "logical bridge" requirement made its first appearance in Social Security cases in Judge Posner's opinion in *Sarchet.* However, its phrasing traces its lineage to Judge Spottswood Robinson's opinion in the non-Social Security case of *Thompson v. Clifford*, 408 F.2d 154 (D.C. Cir. 1968), where Judge Robinson said: " 'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." 408 F.2d at 167.

determination was erroneous.

**B.**

First, the plaintiff complains that the ALJ did not provide an adequate analysis of why her condition did not meet or equal Listing 1.02 (covering major dysfunction of a weight-bearing joint) or Listing 1.04 (covering disorders of the spine). The plaintiff submits that the ALJ offered no analysis of his Listing 1.02 finding, and little analysis of his Listing 1.04 finding. The plaintiff relies on the Seventh Circuit's admonition in *Minnick v. Colvin*, 775 F.3d 929 (7th Cir. 2015), that a "*perfunctory analysis . . .* [is] inadequate to dismiss an impairment as not meeting or equaling a Listing." 775 F.3d at 935 (emphasis supplied). But, here, as always, "general propositions do not decide concrete cases." *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes J., dissenting). *See also Barnhart v. Thomas*, 540 U.S. 20, 29 (2003); *Sierra Club v. Marita*, 46 F.3d 606, 613 (7th Cir. 1995)("Courts do not decide abstract principles of law but rather concrete cases and controversies."). But, the ALJ went far enough here.

Listing 1.02 provides:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Listing 1.04 requires a disorder of the spine resulting in compromise of a nerve root or spinal cord, and one of the following:

> A. Nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and if involving the lower back, a positive straight-leg raising test in the sitting and supine positions; or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, result in need for changes in position or posture more than once every two hours; or
>
> C. Lumbar spinal stenosis resulting in psuedoclaudication, established by finding on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, resulting in an inability to ambulate effectively.

20 C.F.R. Pt. 404, Subpart P, App. 1, § 1.04.

> The ALJ discussed these listings as follows:
>
> While the claimant does have lumbar spinal stenosis, there is no documentation that this is documented by chronic nonradicular pain and weakness resulting in an inability to ambulate effectively. The claimant's most recent physical exam in January 2019 reveals that the claimant had normal coordination, gait, and balance, not consistent with a finding that the claimant's lumbar disc degeneration meets Listing 1.04C. Similarly, while there is also impingement of the ventral thecal sac at L3 -L4, the record does not . . . document positive straight leg raising both sitting and supine as required by listing 1.04A. (Ex. B28F/34).

(R. 21).

So, the ALJ covered Listing 1.02(A) and Listing 1.04(C) by noting an absence of evidence that plaintiff was unable to ambulate effectively. The regulations describe the condition as the inability to "sustain[ ] a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," such as walking a block over rough or uneven surfaces, using public transportation, shopping, banking, and climbing a few steps with the use of a hand rail. 20 C.F.R.

8

pt. 404, subpt. P, App. 1, 1.00B2b(2). *See also Filus v. Astrue*, 694 F.3d 863, 867–68 (7th Cir. 2012). While the plaintiff may be correct that there are instances in the record where she exhibited an antalgic gait, there were also many more instances where it was not. The ALJ noted some of them: May 25, 2017(R. 23, 1198 (Her gait was [just] slightly antalgic . . . .); June 10, 2017 (R. 24, 930-34 (During the physical examination, she could get on and off the exam table without support, walk greater than 50 feet without support with an antalgic gait, and perform heel toe walk));September 19, 2018 (R. 25, 1390 (The musculoskeletal examination was normal and there were no abnormalities in gait, coordination, or balance)); January 18, 2019 (R. 22,1384 (Her gait, coordination, and balance were normal)). *See Zellweger v. Saul*, 984 F.3d 1251, 1254–55 (7th Cir. 2021)(a reviewing court may look at the ALJ's more thorough discussion of the evidence elsewhere in the decision to find support for his Step 3 findings); *Jeske v. Saul*, 955 F.3d 583, 589 (7th Cir. 2020).

So, in reality, plaintiff's argument is an invitation to reweigh the evidence, which the court is not permitted to do. As the court put it in *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021), "[e]ven if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence." *Accord Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). But, even if it could, the needle would point away from plaintiff being unable to ambulate effectively. Here are examples from the record: January 26, 2017 (R. 795(slightly antalgic gait)); August 31, 2016: (R. 989 (normal gait)); October 20, 2017 (R. 1431(normal coordination, gait, and balance)); January 15, 2018: (R. 1425 (no tenderness, full range of motion and strength, normal coordination, gait, and balance)); April 25, 2018: R. 1420 (tenderness in back, normal coordination, gait, and balance));

9

April 4. 2018: (R. 1398 (no joint or muscle pain, normal range of motion, normal gait, normal strength)); June 13, 2018: (R. 1394 (normal range of motion, normal gait, normal strength)); September 19, 2018: (R. 1389-90 (normal range of motion, normal gait, normal strength)); March 11, 2019: (R.1345 (can ambulate normally and sustain a reasonable pace walking for daily activity); February 13, 2019: (R. 1408-09 (no back or neck pain, but joint and muscle pain; normal range of motion, normal gait, normal strength)).

As for 1.04(A) and 1.04(B), the plaintiff concedes that the record contains no positive straight leg raisings test in both the sitting and supine positions, and that the record contains no operative note or pathology report of tissue biopsy confirming spinal arachnoiditis. [Dkt. #23, at 6]. As such, the ALJ's discussion of whether the plaintiff's impairment met a listed impairment was adequate.

**B.**

The plaintiff next argues that the ALJ improperly disregarded the opinions of her treating physicians, Drs. Badescu and Patel. A "treating physician's" medical opinion "is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). If the ALJ decides not to give the opinion controlling weight, he is to weigh it by applying the factors set forth in § 404.1527(c). As a general rule, an "ALJ should explicitly consider the details of the treatment relationship and provide reasons for the weight given to [treating physicians'] opinions." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(2)); *see also Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) ("If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to

consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and support-ability of the physician's opinion.").  Here, the ALJ did not go through the factors, but a court will still not overturn an ALJ's decision as long as the court is assured that the ALJ analyzed the treating physician's medical opinion within the multifactor framework. *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *6 (7th Cir. Aug. 27, 2021).  That's not the case here.

Dr. Patel thought that plaintiff was limited to less than sedentary work and that she could lift less than 10 pounds occasionally and frequently. He thought she could not stand/walk on a long-term basis and could only do so in 30-minute increments, could never bend or tolerate vibration, and needed to change position every hour to lessen pain.  The doctor did allow that plaintiff was able to sustain a reasonable walking pace to carry out activities of daily living and ambulate without an assistive device.  But, the ALJ rejected the doctor's opinion for the sole reason that it purportedly was not consistent with "treatment records that document improvement with injections"citing – in not particularly helpful fashion, *see, e.g., Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014)(the court will not "scour the record for supportive evidence.") –  a block of 40 pages of treatment notes. (R. 27, citing Ex. B22F).

With all deference, a review of the notes does not sustain this conclusion. The treatment notes, in session after session, detail plaintiff experiencing back pain, joint stiffness, limb pain, leg numbness, and muscle spasm. Yes, there are entries indicating that the most recent injection provided relief, but such relief was not always complete, and it never lasted:

August 30, 2017: low back pain, joint stiffness, limb pain, numbness (R. 1208)

September 5, 2017: moderately intense upper back pain, radiates to right leg, right thigh numbness (R. 1212-13)

11

September 18, 2017: moderate upper and lower back pain, last injection provided 100% relief initially, but only 50% after two weeks (R. 1215)

December 11, 2017: moderate low back pain, joint stiffness, limb pain (R. 1218)

December 13, 2017: same, pain unresponsive for four weeks without relief (R. 1222)

July 3, 2018: pain for 3 months; moderate, with stiffness, spasm, radiculopathy, right leg numbness (R. 1225)

August 15, 2018: moderately intense low back pain with stiffness and muscle spasm. (R. 1234). 90% decrease in pain immediately after injection. (R. 1237).

November 7, 2018: moderately intense low back pain with stiffness and muscle spasm; last injection provided 80% relief for two months (R. 1242). 90% relief immediately after injection. (R. 1245)

December 20, 2018: moderately intense pain with stiffness and muscle spasm. Noted that plaintiff had greater than 80% relief for 6 weeks in the past. (R. 1247)

February 21, 2019: moderately intense pain, with stiffness, spasm, radiculopathy, right leg numbness and weakness; four weeks unresponsive (R. 1229) 50% decrease in pain (R. 1232)

Intermittent relief from severe pain here and there does not undermine Dr. Patel's opinion that plaintiff was limited to less than sedentary work. Dr. Patel cannot be on call to inject the plaintiff each time the relief waned, and plaintiff's pain became unresponsive. As such, Dr. Patel's opinion was consistent with his examination results and his notes, and the rule is inapplicable that an ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021).

Similarly, the ALJ afforded little weight to the treating source statement from Dr. Vlad Badescu, because the ALJ concluded that it was almost identical to Dr. Patel's statement. The ALJ further explained that, to the extent Dr. Badescu felt plaintiff was limited to less than sedentary

12

work, his opinion was inconsistent with the record for the same reason as Dr. Patel's was: relief from injections. (R. 28). But, again, the record of relief, sometimes partial, from time to time, following injections does not undermine the doctor's opinion as to plaintiff's limitations generally. Full-time work, eight hours a day, five days a week, week after week, can't be scheduled to coincide with relief from a plaintiff's most recent injection. Accordingly, the case has to be remanded, and the ALJ needs to provide more detail for discarding the two opinions of plaintiff's treating physicians, which, significantly, are consistent with one another.

The ALJ also added the observation that the doctor's opinion was not supported by the claimant's ability to work part time cleaning houses. (R. 23). But, time and again, the Seventh Circuit has cautioned ALJs not to draw conclusions about a plaintiff's ability to work full time based on part-time employment. *Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017). See *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011)(explaining that a claimant's "brief, part-time employment" did not support the conclusion "that she was able to work a full-time job, week in and week out, given her limitations"). The ALJ didn't do that here, exactly; instead, she used the plaintiff's part-time cleaning work to undermine the opinions of her doctors that she was limited to less than sedentary work. But, the ALJ completely ignored the most significant aspect of plaintiff's attempts to work: it triggered all her pain and it took her days to recover. (R. 51). An ALJ cannot ignore that a plaintiff performs daily activities with significant limitations, with help, or with breaks to rest. *See Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021)(". . . the ALJ overlooked, or at least did not acknowledge and engage with, the limitations with those tasks that [plaintiff] included . . . [such as] her need for frequent breaks, and her dependence on her children for daily living activities (including shopping, personal hygiene, and caring for pets"); *Moss v. Astrue*, 555 F.3d 556, 562 (7th

13

Cir.2009)("The ALJ here ignored [claimant's] numerous qualifications regarding her daily activities...."); *see also Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Moreover, the plaintiff testified that the house-cleaning she did was for people she knew and who knew of her limitations. This appears to fall into the category of what the Seventh Circuit has called the "altruistic employer." *See Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013). In any case, it's an exceedingly flimsy – and insufficient – reason to discard medical opinions; and this case must be remanded.

One further observation is in order. The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." The ALJ focused on the fact that plaintiff did not always limp, and, again, that injections provided *intermittent* relief from pain. (R. 25). While neither of those factors necessarily support a rejection of plaintiff's allegations of pain, it is somewhat troubling that the ALJ ignored not only the plaintiff's excellent work history, but her subsequent failed attempts to work despite her severe impairments and pain. As the court stressed in *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016), "'a claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *See also Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir.2015). Moreover, plaintiff's quest for relief through multiple surgeries, multiple injections, and various levels of medication, including strong narcotics, tends to support her allegations. *See e.g., Plessinger v. Berryhill*, 900 F.3d 909, 916 (7th Cir. 2018)(criticizing the ALJ for failure to address fact that plaintiff's allegations of pain were

consistent with the strong prescription pain medication he was taking); *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013)(narcotic pain relievers, submission to steroid injections, and undergoing major surgery all serve to bolster the credibility of plaintiff's allegations); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004)(finding doctor's prescription for strong pain medications corroborated claimant's credibility regarding pain). While the ALJ need not address these points in every case and they are not necessarily dispositive, here, the ALJ's failure to do so, combined with her focus on intermittent relief provided by injections, calls into question her assessment of plaintiff's allegations and the conclusion she reached.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment [Dkt. #22] is granted, the defendant's motion for summary judgment [Dkt. #26] is denied, and this case is remanded to the Commissioner.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 4/19/22